

**U.S. Department of Justice**

*United States Attorney's Office*
*Eastern District of New York*

---

RB
F.#2010R00826

*271 Cadman Plaza East*
*Brooklyn, New York   11201*

November 12, 2010

By ECF and Hand Delivery

The Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  United States v. Kenneth Marsh
           Criminal Docket No. 10-480 (JBW)

Dear Judge Orenstein:

      The government respectfully writes in advance of Monday's hearing in the above-captioned case to advise the Court of its position concerning the standard that the Court should apply in evaluating the adequacy of the defendant's bond, and to request additional conditions of supervised release to be imposed should the Court determine the defendant presents an acceptable bail package.

Facts

      As the Court is aware, following the November 10, 2010 bail revocation hearing in this case, Judge Weinstein determined that the defendant is a danger to the community and that no condition or combination of conditions can assure the public's safety.  (See Transcript of Proceedings (hereinafter, "T") at 99-100).  Judge Weinstein did not remand the defendant under 18 U.S.C. § 3142(b), however, because in addition to that specific statute, the court found that it was required to weigh the constitutional effects of the defendant's confinement in its analysis of Section 3142.  (T 102-104).  Conducting that analysis — weighing the court's inability to protect the community from the defendant against the defendant's constitutional rights — Judge Weinstein determined that the defendant's need to prepare for trial tipped the balance in favor of his continued release.  (Id.)

      The government next addressed the sufficiency of the defendant's bond.  (T 105).  In response, the court first added

the following conditions to his supervised release: (1) home confinement with electronic monitoring, excepting attorney visits, psychiatric evaluations, and a schedule to be set to determine times when the defendant may leave the house in connection with caring for his son (T 105-106); and (2) no use of the telephone, with the exception of calls to 911, counsel, or to arrange childcare.  (T 105).  The court also raised the amount of the bond to $2 million.  (T 106-107).

The government next argued that, no matter the conditions governing supervised release, the bond was insufficient because the defendant forfeited it, and because it was supported by property that is (1) co-owned by the defendant's wife, who never signed the bond, and (2) frozen.  (T 88).  The government also stated:

> If this case were in arraignment court, and this was day one, the bond that's currently in place would not keep the [defendant] out of prison.  And . . . if the defendant . . . does not have enough people in his life who believe he can refrain [from] committing crime while on supervised release to get other suretors to sign [his] bond, that's not the government's problem.  There needs to be an adequate bond in place to prevent him from continuing to be a menace to the community without ceding our argument that no [possible] bond could do that.

(T 107).

In response, the court stated: "This issue is referred to the Magistrate Judge to consider whether such additional security could be provided."

## Analysis

A.   <u>The Proper Standard In Evaluating the Defendant's Bond</u>

Judge Weinstein did not mandate the defendant's continued release.  Rather, he found that the defendant's constitutional rights must be taken into account in applying 18 U.S.C. § 3142.  Weighing the facts then before him — the defendant's dangerousness against his need to prepare for trial — the court found the defendant's need to prepare for trial while free on bond to be overriding.

When the government then turned to the sufficiency of the bond, the court acknowledged that the adequacy of the sureties and property supporting it remained relevant to the question of his continued release, and referred that issue to Your Honor.

Given this, Your Honor must evaluate the adequacy or inadequacy of the defendant's proposed bond and then determine whether that analysis shifts the balance of statutory and constitutional factors that Judge Weinstein identified previously.

Without access to the defendant's proposed bond — the government maintains he has forfeited his prior bond and requires new sureties to support a new bond — the government cannot advise the Court as to its position on that analysis. However, if the defendant is unable to present any bonafide sureties and instead comes before the Court seeking to continue his old bond with only the signatures and properties that currently support it, that proposed bail package would not be minimally sufficient to support his release regardless of any dangerousness analysis, and the bond should be revoked. Moreover, given the defendant's demonstrated willingness to violate the terms of his prior bond, which was secured by his own mother's home, the government requests that the Court require that any proposed bail package be supported not only by property sufficient to secure the bond, but also by multiple bonafide sureties who place substantial moral suasion upon the defendant.

Finally, since the defendant's need to prepare for trial is a major factor in the analysis Your Honor must perform, the government requests that the Court establish a thorough record concerning the activities the defendant cannot adequately perform while incarcerated.

B. <u>Additional Restrictions</u>

Should the Court find the defendant's proposed bail package sufficient to support his release, the government requests that, in addition to those conditions previously set by Judge Weinstein, the Court order that:

- the defendant be permitted the use of only one telephone (the "Approved Telephone"), to be used pursuant to the conditions already established (the "Prior Telephone Order"), and that the defendant (i) provide to the government for approval a list of individuals that he may need to contact under the Prior Telephone Order, (ii)

    limit his communications to government-approved individuals (the "Approved Individuals"), (iii) provide the government with the telephone numbers of the Approved Individuals, and (iv) consent to monitoring of all communications occurring over the Approved Telephone;

- the defendant provide to the government for approval a list of all individuals who may visit him during his home confinement and only receive visits from individuals approved by the government;

- the defendant (i) be barred from using all but one computer, which will remain inside his home (the "Approved Computer"), (ii) be barred from accessing the internet or engaging in any form of computer to computer communication over the Approved Computer, including email, (iii) provide to the government proof of the cessation of all internet service to his home, and (iv) consent to the installation of monitoring software on the Approved Computer;

- the defendant consent to the search of his home at any time without prior notification by Pretrial Services officers, United States Secret Service agents and United States Postal inspectors; and

- such other conditions as the Court deems appropriate to attempt to protect the public from the defendant.

          Respectfully submitted,

          LORETTA E. LYNCH
          UNITED STATES ATTORNEY


       By: _____/s/_____
          Roger Burlingame
          Jonathan E. Green
          Michael L. Yaeger
          Assistant U.S. Attorneys
          (718) 254-7000

cc: Fred Schwartz, Esq.
   Melissa Roman (pretrial services)