# ALAN S. FUTERFAS

ATTORNEY AT LAW

260 MADISON AVENUE, 22ND FLOOR

NEW YORK, NEW YORK 10016-2400

(212) 684-8400

ELLEN B. RESNICK

FACSIMILE: (212) 684-5259

(212) 679-1844

asfuterfas@futerfaslaw.com

March 17, 2011

By ECF and Federal Express
Hon. Jack B. Weinstein, Sr. District Judge
and
Hon. Mag. James Orenstein
United States District Courts
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Kenneth Marsh, 10 CR 480 (JBW)</u>

Dear Judge Weinstein and Magistrate Judge Orenstein:

This letter is respectfully submitted in response to the letters of Mr. Janghorbani and Ms. Karen Hennigan, dated March 9 and 14, respectively, concerning the current and prospective expenses in this case and, in particular, our application to increase the carve-out for expenses. It is also submitted in anticipation of the appearance before both Courts this Friday, March 18, 2011 at 9:30 am.

At this juncture, it is apparent that the carve-out of $43,000 for pretrial expenses was plainly inadequate in a case of this complexity. Second, unless and until the costs already incurred can be satisfied, the defense will not have access to the Rule 16 materials nor to the expertise of an options expert and cannot provide effective representation to Mr. Marsh in resolving this case. While the government and SEC stand firmly behind the notion that $43,000 should be sufficient for pretrial expenses here, it is they who elected to bring this complex case and who simultaneously seized the entire operations of Gryphon, the business through which the charged fraud allegedly occurred. Mr. Marsh is presently foreclosed from utilizing the very information he needs to prepare his defense -- approximately 13 terabytes of data representing his own business records that have been copied and reproduced in a raw format that cannot readily be used.

We obviously need access to the Rule 16 materials, and that access has a very real cost that exceeds the sums of money available to Mr. Marsh for all of his pretrial

ALAN S. FUTERFAS

Hon. Jack B. Weinstein
Hon. Mag. James Orenstein
March 17, 2011
Page 2 of 4

expenses. We cannot help but note the contrast between the $43,000 that the government claims is adequate for Mr. Marsh to review and assess terabytes of data and the $20 million reportedly paid for the defense of Raj Rajaratnam of the Galleon hedge fund now on trial in the Southern District of New York. We are fairly certain that the discovery there is no more voluminous nor the issues more complicated than they are in this case. While we entered this case knowing we must work efficiently and on a shoestring budget, we also recognize that an adequate defense cannot proceed without the ongoing expertise of Mr. Call, Mr. DeNigris and, prospectively, a forensic psychiatrist. This expertise involves real costs that must be borne.

Mr. Call, our database expert, has already incurred $45,000 in expenses to process just ten percent of the enormous Rule 16 discovery. His firm was hired to transform data received in raw format into a reviewable format. He has only completed this process for ten percent of the Rule 16 data which includes the Gryphon emails. As we reported previously, Mr. Call has agreed to accept $33,896 for his outstanding bill, a discount of 25 percent. Mr. Jerry DeNigris was retained to analyze the options recommendations made by Ken Marsh at Gryphon. He has only completed his options analysis for the year 2009. Mr. DeNigris' outstanding bill for his work thus far is $26,950. This represents a savings of $19,700 in hours that he actually worked but did not bill. We note that Mr. DeNigris' analysis is extraordinarily helpful to the defense. We respectfully request that these two experts be compensated for their past work and we need their assistance going forward. Based on own anecdotal experience with the type of work these two experts have provided thus far, and our numerous conversations with each expert in recent weeks, we believe their bills are reasonable.

In terms of the database that Mr. Call is creating, there are additional costs that will have to be incurred. We will not have access even to the ten percent of data that Mr. Call has processed until it is loaded onto a database. By the time I was substituted into this case, Mr. Call had already uploaded the processed CD's onto the computers at Mr. Schwartz's law firm using the searchable Summation software. Mr. Schwartz' firm, Yoss LLP, just announced its dissolution and obviously will not be hosting the database. (*See* attached news report.) Consequently, Mr. Call has offered us a reduced flat fee of $4,000 plus a monthly "hosting" fee of $450 to give us access to the Rule 16 data he has already processed. For this sum, Mr. Call will personally set up the Summation software using his company's remote server located in California (normally a cost of $990). He will burn copies of all 22 CDs he has processed to date (normally $15 per CD), mail the CD's to the remote server, customize the Summation site for our specific review purposes, and upload the data (a process that will take 3-4 days and would normally exceed the flat fee offered here). This will enable my firm and Mr. Marsh to access the Summation database provided Mr. Marsh has an internet connection.

ALAN S. FUTERFAS
Hon. Jack B. Weinstein
Hon. Mag. James Orenstein
March 17, 2011
Page 3 of 4

In addition, we will need Mr. Call's help going forward to work with Mr. Marsh in identifying, from the vast inventory of Rule 16 materials, other categories of discovery that are pertinent to our defense. In addition to the Rule 16 material that he has already processed, consisting mostly of Gryphon emails, there are countless other categories of materials among the 40 computer hard drives that the government has produced. Specifically, these computers contain documents that were created or scanned into the system, including worksheets and PDF files. Mr. Call believes that he can reduce the amount of time and expense needed to locate helpful materials if he can communicate with Mr. Marsh by telephone and review together the discovery inventory and the search inventory. Mr. Marsh is obviously the one most familiar with his business. Mr. Call believes that, together, they can reduce the 13 or so terabytes of data to the most critical 30 gigabytes. If he can communicate with Mr. Marsh for this purpose, Mr. Call has offered to process and load onto Summation any data up to 30 gigabytes for an additional $18,000, including the time needed to speak to Mr. Marsh. We have notified Mr. Call of the appearance on March 18, 2011 at 9:30 am and he will be standing by telephonically to provide any additional information requested which may be helpful to this proceeding.

There is additional work that we need from Jerry DeNigris, as we have previously discussed. The cost of his completing even a sampling of the options recommendations for the years other than 2009 (including 2008 and a few months of 2010) will be between $18,000 and $20,000. This does not include $4,000 to purchase the historical databases to perform his analysis ($2500 for 2008 and $1,500 for 2010). In addition, we will likely need Mr. DeNigris' testimony at either trial or sentence, even assuming we can reach a disposition with the government. He charges $1,800 per diem.

We have conferred with Ken Falk and are advised that there is approximately $1.4 million in funds from the sale of assets and other sources in this case. Of that total, $124,230 is held in trust by Mr. Falk pursuant to the carve-out. The $1.4 million comes from four sources. First, $480,141 remains in Mr. Falk's escrow account from the original $556,000 in cashiers checks that were drawn on Gryphon's account. Second, from the sale of two parcels of vacant land in Staten Island, Mr. Falk is holding in escrow $124,230. An additional $333,518 in sale proceeds is now held by the Marshals Service. Further, $20,000 from the sale is currently held in escrow by the buyer's attorney, Pat Corbo, Esq., pending a formal opinion from the state that no transfer tax is due. (The tax opinion cost $250.) If the $20,000 is released, it will be transferred to the Marshals Service. Third, $388,647 in proceeds is anticipated from the sale of Mr. Marsh's residence scheduled to take place in the next two weeks. Fourth, the Marshals Service received $60,000 in proceeds from the sale of Ken Marsh's car.

Of the $124,230 held in escrow pursuant to the carve-out, $19,700 is available now to fund pretrial expenses pursuant to the carve out agreement; $20,000 is available for expenses should the case go to trial; $29,600 is available for attorney's fees should the

**ALAN S. FUTERFAS**

case go to trial; and $15,000 is available for a trial fee should the SEC civil case go to trial. In addition, $39,892 of the carve-out was made available for living and mortgage expenses for Ken Marsh. Those moneys were not used for that purpose (because Mr. Marsh was remanded) and are still available to fund expenses in this case.

As we have noted in our prior letters on this subject, there are no other funds available to Mr. Marsh for these expenses. Based on the foregoing, and as stated more fully in our prior submission to this Court, we respectfully request that the expenses for Mr. Marsh's defense, outlined above, should be paid from the carve-out. To the extent the carve-out is insufficient to cover the outstanding and future expenses in the criminal case, the carve-out should be expanded.

We thank both courts for their consideration of these matters.

Respectfully yours,

*Alan Futerfas / EBR*

Alan S. Futerfas

cc: Roger A. Burlingame, Esq.
Joseph Boryshansky, Esq.
Alexander Janghorbani, Esq.
Alexander Call

## SPECIAL REPORTS

- Intellectual Property
- Labor & Employment
- LITIGATION
- FOCUS EUROPE
- STUDENT EDITION

## VIDEOS

## Hall of Fame

## ALM EVENTS

## SUBSCRIBE

## ADVERTISE

## ABOUT US

## FEATURED SPONSORS

## LAW.COM NETWORK

- Sites
- Jobs
- Verdicts
- LawCatalog
- Experts
- Online CLE
- Legal Intelligence
- Events
- Resources
- Law Firm Papers
- Court Reporters
- Legal Dictionary
- Legal Blogs

## The Firms

March 14, 2011 6:29 PM

**Yoss LLP to Dissolve**

Posted by Nate Raymond

Yoss LLP, which was the largest certified minority-owned U.S. law firm, is set to dissolve at the end of the month, sibling publication Daily Business Review reports.

The closure of the Florida-based law firm was confirmed in an e-mail sent Friday to employees by managing partner George Yoss. The closure comes just months after founder and former name partner Henry Adorno's law license was suspended due to alleged mishandling of a settlement.

The firm, then called Adorno & Yoss, rebranded. But layoffs, partner departures, and office closings have hit the firm since then, the Daily Business Review recounts. At the time of the reorganization, the firm said it had 200 professionals; a search of the firm's Web directory on Monday found 124 lawyers listed.

"As we are sure you are aware, these have been extremely difficult times for the firm," Yoss said in the e-mail. "After meeting with the bank and evaluating the firm's status and financial position, the decision was made to wind down its operation."

Make a comment

Comments (0)
Save & Share: Facebook | Del.ic.ious | Digg It | Email |

Reprints & Permissions

**Comments**

Report offensive comments to The Am Law Daily.